IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02500-SBP

JONATHAN MICHAEL JUNG,

      Plaintiff,

v.

MICHAEL GOLDMAN, Deputy Chief of Mission, U.S. Embassy in Turkey, and
MARCO RUBIO, Secretary of the U.S. Department of State,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

      Plaintiff Jonathan Michael Jung brings this action to compel the adjudication of his foreign-citizen fiancée's visa application. Defendants Michael Goldman, Deputy Chief of Mission at the U.S. Embassy in Turkey, and Marco Rubio, Secretary of the U.S. Department of State ("Defendants" or the "State Department")[1] have moved to dismiss the case, raising both jurisdictional and failure-to-plead arguments in support of their request for dismissal. ECF No. 8 ("Motion" or "Motion to Dismiss") at 5-6. Mr. Jung opposes the Motion. ECF No. 12. Defendants have replied. ECF No. 13. The undersigned presides over the matter with the parties' consent pursuant to 28 U.S.C. § 636(c)(1). ECF No. 10 (consent form); ECF No. 11 (Order of

---

[1] Mr. Jung originally sued Antony Blinken, former Secretary of the Department of State. ECF No. 1. However, because Defendants are each named only in their official capacities for actions taken in their respective roles under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and its implementing regulations, Secretary Rubio is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

Reference).

Having now carefully considered the Motion and associated briefing, the entire docket, the parties' respective positions at the oral argument held on May 2, 2025 (ECF No. 18), and the applicable law, the court respectfully **GRANTS** the Motion.

## BACKGROUND

The impetus for this litigation is the pursuit of a "K-1 visa," which allows the fiancé or fiancée of a citizen of the United States to travel to this country to marry his or her U.S. citizen sponsor within ninety days of arrival. *See* 8 U.S.C. § 1101(a)(15)(K)(i). The court begins with an overview of the K-1 visa process generally, then sets forth the specific facts concerning the handling of the visa application at issue here, drawn from the filings in this case.

***Statutory and regulatory framework.*** To obtain a K-1 visa, a U.S. citizen sponsor must file an I-129F, Petition for Alien Fiancé(e), with U.S. Citizenship and Immigration Services ("USCIS"). *See* https://www.uscis.gov/sites/default/files/document/forms/i-129f.pdf (last visited September 17, 2025)[2]; *see also* 8 U.S.C. § 1184(d)(1) (setting forth requirements for "issuance of visa to fiancée or fiancé of citizen," including the presentation of "satisfactory evidence" to show "that the parties have previously met in person within 2 years the date of filing the petition" and "have a bona fide intention to marry"); 8 C.F.R § 214.2(k)(1) ("To be classified as a fiancé or

---

[2] The Court takes judicial notice of information available on websites administered by the federal government. *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (stating that courts may take judicial notice of government websites); Fed. R. Evid. 201(b)(2) (stating that judicial notice may be taken of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot readily be questioned").

fiancée . . ., an alien must be the beneficiary of an approved visa petition filed on Form I-129F.").

If USCIS approves the petition, it is forwarded to the State Department's National Visa Center

for "pre-processing," *see* Immigrant Visa Process: Step 2: Begin National Visa Center (NVC)

Processing,"[3] followed by an interview with the appropriate embassy or consulate. *Id.*

      "Consular officers may issue a visa to 'an immigrant who has made [a] proper

application' demonstrating eligibility." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at

*1 (D.C. Cir. July 24, 2024) (quoting 8 U.S.C. § 1201(a)(1)(A) (alteration in original)).

However, the Immigration and Nationality Act ("INA") directs that no visa may be issued when

"it appears to the consular officer, from statements in the application, or in the papers submitted

therewith, that such alien is ineligible to receive a visa[.]" 8 U.S.C. § 1201(g).[4] The applicant

bears the burden to establish eligibility. 8 U.S.C. § 1361.

      A consular officer determines whether to refuse or grant a visa application based on the

in-person interview with the applicant and application materials presented at the interview. *See* 9

---

[3] Available at https://travel.state.gov/content/travel/en/us-visas-immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited September 17, 2025).

[4] Following reordering of the INA, § 221 is now properly cited as 8 U.S.C. § 1201(g), which provides in relevant part:

      No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g).

Foreign Affairs Manual ("FAM") § 504.1-3 ([Immigrant Visa] Application Processing)[5]; *see also Karimova*, 2024 WL 3517852, at *1 n.1 (explaining that "the Foreign Affairs Manual 'articulates' the State Department's 'official guidance, including procedures and policies, on matters relating to Department management and personnel'") (quoting 22 C.F.R. § 5.5). A consular officer "*must* issue the visa [or] refuse or refuse the visa" once the "application has been properly completed and executed" before the officer. 22 C.F.R. § 41.121(a) (emphasis added)[6]; *see also* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). Consular officers "cannot temporarily refuse, suspend, or hold the visa for future action" at that point. *Id.*; *see also id.* § 504.9-2 (same). Therefore, any applicant "to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day . . . *must* be found ineligible[.]" 9 FAM § 504.1-3(i)(1) (emphasis added). The "requirement to find an applicant ineligible when a visa is not issued applies even when" the consular officer decides to attempt to track down additional information. *Id.* The FAM emphasizes that "[t]here is no such thing as an informal refusal or a pending case once a formal application has been made." *Id.*

Even if an application is refused, a consular officer may "conclude that the applicant could perhaps still receive a visa eventually if circumstances change." *Karimova*, 2024 WL 3517852, at *2. In that event, "the consular officer may choose to place an officially refused

---

[5] The public version of the Foreign Affairs Manual, which the court references here, is available at https://fam.state.gov (last visited September 17, 2025).

[6] A K-1 visa is categorized as a "nonimmigrant" visa, with the fiancée allowed to apply for lawful permanent resident status after her marriage. *See* https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens (last visited September 19, 2025). The corollary provision for immigrant visas is found at 22 C.F.R. § 42.81(a).

application in administrative processing." *Id.* "Such an applicant cannot come into the United States since the consular officer has refused to issue her a visa. But that refusal may (or may not) be overcome with new information at a later date." *Id.* (citing 9 FAM § 306.2-2(A)(a) ("When the applicant has presented additional evidence to attempt to overcome a prior refusal, [the consular officer] should re-open and re-adjudicate the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa.")). If the consular officer receives sufficient new information, the officer can determine that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. 9 FAM § 306.2-2(A)(a)(2). "Unless and until that happens, though, the visa application remains officially refused." *Karimova*, 2024 WL 3517852, at *2.

   ***The visa application for Mr. Jung's fiancée.*** Mr. Jung, a U.S. citizen who lives and works in Colorado, filed a visa petition for his fiancée, Haneen Abdulsalam Al-Ithawi, who currently lives in Turkey. ECF No. 1 ¶¶ 2, 8, 10. Mr. Jung asserts that his fiancée has been living in Turkey as a refugee for more than ten years, after she fled Iraq to avoid being forced into a marriage at her father's insistence. *Id.* ¶ 7. Mr. Jung and his fiancée hope to marry in the United States, but then return together to Iraq for a second wedding ceremony so that his fiancée can see her family again. *Id.* ¶ 8.

   USCIS approved the visa petition in March 2024, *id.* ¶¶ 3, 18, triggering the consular-interview process. That interview occurred at the U.S. embassy in Turkey on May 10, 2024. *Id.* ¶ 20. The same day, Plaintiff's fiancée was informed that the State Department had refused her application under 8 U.S.C. § 1201(g):



U.S. Department of State
**IMMIGRANT VISA APPLICATION**

## Refused

Immigrant Visa Case Number:   ANK2024592003 01 ANK
Case Created:                             01-Apr-2024
Case Last Updated:                     14-Apr-2025

A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete. Please be advised that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
For more information, please visit U.S. Embassy Ankara.

ECF No. 19-2[7]; *see also* ECF No. 19-1 at 2 (May 10, 2024 email to Plaintiff's fiancée from U.S. Embassy in Ankara, Turkey); ECF No. 1 ¶ 21. As to a refusal made specifically under § 1201(g), like Mr. Jung's fiancée's, the Department of State's Bureau of Consular Affairs' website explains:

> A visa refusal under section 221(g) of the Immigration and Nationality Act (INA) means the applicant did not establish eligibility for a visa to the satisfaction of the consular officer, as is required under U.S. law, specifically section 291 of the INA. When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case under 221(g), she or he will convey to the applicant whether the applicant is required to

---

[7] The U.S. Department of State's Visa Status Check website confirms that the refusal of Ms. Al-Ithawi's visa application remains in place. *See* https://ceac.state.gov/CEACStat/Tracker/Status.aspx?App=NIV, last visited September 17, 2025.

provide any further documentation or information, or whether the case requires additional administrative processing.

*See* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited September 17, 2025).

As stated in the refusal notification for Ms. Al-Ithawi, a consular official did in fact place this application in "administrative processing" and requested additional information from her, specifically, a form DS-5535. *See* ECF No. 19-1 at 3; *see also* Supplemental Questions for Visa Applicants, available at https://in.usembassy.gov/wp-content/uploads/sites/71/DS-Form-5535.pdf, last visited September 17, 2025 (requesting information including travel to other countries in the last fifteen years, identities of siblings, employment history, and social media identifiers). According to Mr. Jung, his fiancée "promptly provided [the form] on May 13, 2024." ECF No. 1 ¶ 21.

Both Mr. Jung and his fiancée "have inquired as to the status of this visa application on numerous occasions and received no meaningful responses." *Id.* ¶ 24. At some point, Mr. Jung sought the assistance of United States Senator Michael Bennet, whose office received this correspondence from the U.S. Embassy in Turkey in May 2024:

> The consular officer referred the case for further administrative processing, after which the consular officer will reconsider the eligibility for a visa for the beneficiary. At this time, administrative processing is still ongoing, there has been no change on the beneficiary's case. We have noted your office's interest. Unfortunately, we are unable to predict how long administrative processing will take for a given case. I will note that this process often takes several months or longer to complete. As soon as this process is completed, we will notify the beneficiary of the decision.

*Id.* ¶ 23. This, apparently, is where things stood when Mr. Jung filed this lawsuit on September 11, 2024.

In this case, Mr. Jung contends that the State Department has unreasonably delayed the adjudication of his fiancée's visa application, which he seeks to compel under 5 U.S.C. §§ 555(b) and 706(1) of the Administrative Procedure Act ("APA") and under the Mandamus Act, 28 U.S.C. § 1361. *See* ECF No. 1 ¶¶ 25-36. The essence of Mr. Jung's claims is that consular officers have failed to finally adjudicate his fiancée's application as required under 22 C.F.R. § 41.121(a) and that, to the extent the application has become suspended in a state of non-final "refusal," Defendants have unreasonably delayed its processing in violation §§ 555(b) and 706(1) of the APA. Mr. Jung also makes a claim alleging a violation of his substantive and procedural due-process rights under the Fifth Amendment, premised on the contention that he "has a statutorily created entitlement to adjudication of his fiancée's visa application" and that the "delay in adjudicating it "constitutes a deprivation of [his] protected interest without due process." *Id.* ¶ 39.

Defendants have moved to dismiss this action based on both jurisdictional and pleading deficiencies. They first argue that the case is moot because the State Department performed a final agency action by refusing the fiancée's visa, and that even if it were not moot, the doctrine of consular nonreviewability renders the action non-justiciable. Further, insofar as Mr. Jung seeks an order compelling Defendants to complete any post-refusal administrative process, Defendants say there is no viable claim under the APA because no required action has been unreasonably delayed. As for the mandamus claim, Defendants contend that this claim should not proceed because the APA provides an adequate remedy at law. Finally, Defendants argue that

Mr. Jung's due-process claim fails because he has no protected liberty interest in his non-citizen fiancée being admitted to this country.

Mr. Jung vigorously rejects the assertion that Defendants have fully adjudicated his K-1 visa petition and reached a final decision on his fiancée's visa application: "no final adjudication has occurred," per Mr. Jung, and he "requests only that the Court order final adjudication of the visa application, including administrative processing, within a reasonable time." ECF No. 12 at 5-6. Mr. Jung proceeds to argue that neither the doctrines of mootness nor consular non-reviewability apply in this context, where there has been no final adjudication; that Defendants have a nondiscretionary duty to adjudicate visa applications within a reasonable time; and that Mr. Jung states viable claims for relief, including for a violation of his due-process rights under the Fifth Amendment. He urges the court to exercise jurisdiction and compel "Defendants to take action effectuating their statutory duty to complete and finally adjudicate the I-129F fiancée visa for Haneen Abdulsalam Al-Ithawi." ECF No. 12 at 1.

In reply, Defendants reiterate their position that jurisdiction is lacking because Mr. Jung's claims challenge a delay in deciding a visa application that was in fact refused, but that even if the court determines that it has jurisdiction, Mr. Jung has not stated a plausible unreasonable-delay claim under the APA. Defendants reemphasize that Mr. Jung is not entitled to mandamus relief and that his due-process claim fails, and they assert that Mr. Jung has rebutted neither of these points.

## ANALYSIS

### I.    Article III Standing Is the Relevant Jurisdictional Inquiry.

The primary thrust of Defendants' request for dismissal is that the case is moot because

the consular office in Turkey already refused, and thus adjudicated, the visa application. ECF No. 8 at 5-6. Without question, a federal court "lack[s] subject-matter jurisdiction over a case that is moot." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (citing *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019)).

Starting with the general principles governing jurisdiction, "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Because "federal courts are courts of limited jurisdiction, [they] presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)). Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim on grounds that the court lacks jurisdiction. "Rule 12(b)(1) challenges may take two different forms. 'The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests.'" *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004)). Defendants here describe their attack on subject-matter jurisdiction as a facial challenge, ECF No. 8 at 5, and so the court accepts the allegations in Mr. Jung's pleading as true. *See, e.g.*, *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Looking next to the case-or-controversy requirement under Article III of the Constitution,

"[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Both standing and mootness are aspects of the case-or-controversy requirement. *See id.* at 64 (discussing standing); *Mackey v. Correctional Health Partners*, No. 23-cv-00101-RM-SBP, 2023 WL 7495935, at *3 (D. Colo. Nov. 13, 2023) (discussing mootness). Yet, they are "distinct justiciability doctrines' with different jurisdictional burdens." *Meleo v. Blinken*, No. CV 23-03495 (RK), 2024 WL 4345289, at *7 (D.N.J. Sept. 30, 2024) (quoting *Hartnett v. Pennsylvania State. Ed. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020); citing *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022) ("The difference is not merely one of semantics.")). It is hornbook law that Mr. Jung, as the party invoking federal jurisdiction, bears the burden of establishing standing. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

"Mootness is 'standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Prison Legal News*, 944 F.3d at 879 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016)). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point *during litigation*, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (cleaned up) (emphasis added); *accord Brown*, 822 F.3d at 1165.

Here, Defendants' argument that the case is moot rests on an action taken *before* Mr. Jung filed this case on September 11, 2024: the refusal of his fiancée's visa application on May

10, 2024. *See* ECF No. 8 at 5-6. Defendants assert that some courts have held that a refusal of a visa application under 8 U.S.C. § 1201(g) constituted an adjudication of the application, prompting the courts to dismiss those cases on mootness grounds. *See id.* at 6 (citing *Conley v. U.S. Dep't of State*, 731 F. Supp. 3d 104 (D. Mass. 2024), and *Tariq v. Blinken*, No. 3:21-cv-02841-M, 2023 WL 2661543 (N.D. Tex. Jan 31, 2023)). The court reads those cases somewhat differently.

In *Conley*, while the defendants argued that the pre-suit refusal of a visa application subject to further administrative processing was a final decision sufficient to moot the plaintiff's claim for unreasonable delay, *see* 731 F. Supp. 3d at 110, the court ultimately did not grant the government's motion to dismiss on mootness grounds, but rather "[b]ecause defendants have acted on the visa application, they have not failed to take any legally required action, and Count 1 *does not state a claim upon which relief can be granted* and will be dismissed." *Id.* at 111 (emphasis added). And in *Tariq*, the federal lawsuit was filed on November 15, 2021, and the visa application was refused months later—on February 23, 2022. *See* 2023 WL 2661543, at *1. That *post-filing* change of circumstances falls within the parameters of the mootness doctrine. *See Genesis Healthcare*, 569 U.S. at 72. That said, some courts have dismissed cases on mootness grounds based on a pre-lawsuit refusal of a visa application under § 1201(g), notwithstanding the existence of pending administrative processing. *See, e.g.*, *Jolghazi v. Blinken*, No. 5:23-CV-01071-OLG, 2024 WL 4182593, at *3 (W.D. Tex. July 30, 2024) (finding that the visa application "remains refused" and that the action was "moot and the Court lacks jurisdiction to consider this case").

In scrutinizing the timelines in these cases, the court's purpose is not to elevate form over

substance, but rather to fulfill its independent duty to assess whether jurisdiction exists under the particular circumstances of the case at hand. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (courts are "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction") (Gorsuch, J., concurring). "In general, this requires court to critically think about presented issues, as well as the circumstances in which the issues are presented." *Martinez v. Baumann*, No. 5:24-CV-0894-JKP, 2025 WL 2109964, at *5 (W.D. Tex. July 28, 2025).

Upon careful consideration of the circumstances in which the claims regarding the pre-suit actions on the visa application are presented, the court respectfully disagrees with the State Department that mootness is the relevant jurisdictional principle—where there has been no "intervening circumstance" since the visa application was refused. *See Genesis Healthcare*, 569 U.S. at 72. There is a "basic flaw in the Government's argument: It is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) (quoting *Genesis Healthcare*, 569 U.S. at 72) (cleaned up) (emphasis in original). As the court in *Martinez* explained under circumstances that mirror the procedural posture here:

> The characterization of this case as moot expands the term beyond its normal legal usage. In this Court's view, actions taken before the filing of a civil action may affect whether the litigant has *standing* to bring the lawsuit, but such actions do not render a case moot. This view is exemplified by the Supreme Court: "Mootness has been described as the doctrine of standing set in a time frame," with standing requiring a "personal interest that must exist" when a party commences litigation, and avoiding mootness requires that interest to continue throughout the existence of the case. *Arizonans for Official English*, 520 U.S. at 68 n.22 (citation and internal

> quotation marks omitted). To become moot, a case must have first been a live case
> or controversy.

*See* 2025 WL 2109964, at *5 (emphasis added); *see also Myers v. Rubio*, No. 2:24-CV-1592,

2025 WL 1208646, at *4 (W.D. Pa. Apr. 25, 2025) (in a case seeking to compel the adjudication

of an alien fiancée's visa application, holding "that standing is the more appropriate lens through

which to view Defendants' challenge. The parties are not debating whether an *intervening*

circumstance deprives the Court of jurisdiction. Defendants are alleging that there is no live case

or controversy because [the fiancée's] visa application was refused on March 1, 2024, before this

litigation was commenced.") (emphasis in original). As in *Martinez* and *Myers*, the issue here is

not whether an intervening circumstance deprives the court of subject-matter jurisdiction, but

rather whether there was a live controversy when Mr. Jung brought the action. Therefore, this

"court must reframe the parties' mootness arguments in terms of standing doctrine," *Martinez*,

2025 WL 2109964, at *5, and decide whether Mr. Jung has proven that he has standing to bring

this matter by showing that no decision has yet been made on his fiancée's visa application.

    While Defendants have not contested jurisdiction based on standing, it is beyond debate

that this court can—and must—evaluate whether standing exists. The Tenth Circuit has

explicitly cautioned lower courts from proceeding to evaluate the merits of underlying claims

where there is any uncertainty about a litigant's standing to pursue them. *Colo. Outfitters*, 823 at

542, 544 n.5, 554 (remanding case to dismiss for lack of jurisdiction where district court had

proceeded to assess the merits based on "some generous assumptions" about standing, and

emphasizing that a ruling based on incorrect assumptions about jurisdiction "is no ruling at all")

(citing *Cunningham v. BHP Petrol. Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)

(explaining that a judgment entered without jurisdiction is void)); *see also Martinez*, 2025 WL 2109964, at *5 ("Although Defendants do not contest jurisdiction based on standing, the jurisdictional principle is sufficiently related to the mootness argument to warrant consideration.").

"To establish Article III standing, [Mr. Jung] must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (cleaned up) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Importantly, the injury "must actually exist," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), and the relief requested cannot be to have a defendant do what "it has already done." *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014) (dismissing a claim under Rule 12(b)(1) when the plaintiffs were requesting an agency to take action it had already taken); *Martinez*, 2025 WL 2109964, at *6 ("If the visa application has been finally adjudicated, as Defendants contend, there is no action to compel, and no resulting injury to Plaintiff."); *see also* ECF No. 8 at 5 (arguing that the court "lacks jurisdiction over Plaintiff's claims because the Department has performed a final agency action by refusing the visa").

The prong of the standing test of primary significance here is redressability, given that Mr. Jung's requested relief is to compel Defendants to adjudicate his fiancée's visa application. For Mr. Jung's purported injury to be redressable, the relief requested must be something the court has the power to order. *See, e.g.*, *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[T]here is no redressability if a federal court lacks the power to issue such relief."). Therefore, standing turns on whether Mr. Jung has shown that Defendants have not fully discharged their

duties to review and adjudicate the visa application. If they have, Mr. Jung's purported injury is not redressable by the Court.

## II.    Mr. Jung Lacks Standing Because Defendants Discharged Their Sole Nondiscretionary Duty by Refusing the Application.

The court respectfully finds that Mr. Jung has failed to meet his burden to establish standing for any of the claims he attempts to bring in this lawsuit.

### A.    APA and Mandamus Unreasonable-Delay Claims

Mr. Jung brings unreasonable-delay claims under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act. In both claims, he seeks the same relief: for the court to compel Defendants to adjudicate his fiancée's visa application. *See* ECF No. 1 ¶¶ 29, 35-36.

***Legal standards.*** As an initial matter, "[t]he Administrative Procedure Act generally permits a court to step in when an agency fails to act." *Salas v. Jaddou*, No. 24-cv-01526-DDD-CYC, --- F. Supp. 3d ---, 2025 WL 2158278, at *3 (D. Colo. July 22, 2025). Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Where—as in the instant case—"no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) (hereafter "SUWA") (quoting 5. U.S.C. § 704) (emphasis in original). Claims based on an alleged failure to take action are governed by 5 U.S.C. § 706(1). Under that provision, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." *Id.* But not all instances of governmental inaction or delay may be pursued under the APA. "A claim under § 706(1) [of the APA] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required*

*to take*." *SUWA*, 542 U.S. at 64 (emphasis in original); *accord Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 875 (10th Cir. 2023). And Section 706(1)'s "limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." *SUWA*, 542 U.S. at 65 (emphasis in original). Section 706(1) encompasses actions mandated by statute and by regulation. *Id.*

With respect to Mr. Jung's mandamus claim, mandamus has long been recognized to be "a drastic remedy, available only in extraordinary circumstances." *W. Shoshone Bus. Council ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34-35 (1980)). And as the Tenth Circuit recently has confirmed, "[w]hen review by other means, such as under the APA, is possible, *mandamus isn't available*." *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023) (citing *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394 (1976)) (emphasis added). If Mr. Jung fails to establish a failure-to-act claim under § 706(1), he "can't then turn to mandamus relief as an alternative." *Id.*

**Evaluation of the record.** Mr. Jung contends that the consular officer's initial "refusal" of the visa application did not satisfy Defendants' obligation under the law because "simple logic dictates that an application that is subject to further review and consideration has not been completely and fully adjudicated." ECF No. 12 at 7. Mr. Jung emphasizes that Defendants' own statements suggest that they understood something more remained to be done with respect to the

visa application. For example, a "consular interview worksheet"[8] stated that "[y]our visa application is **temporarily refused under section 221(g)** of the U.S. Immigration and Nationality Act for the reasons stated below. However, this refusal may be overcome once the missing documentation and/or administrative processing have been met." ECF No. 12 at 6 (emphasis in Plaintiff's response). For their part, Defendants argue that, "[u]nder 22 C.F.R § 41.121(a), . . . a consular officer has only two options when a visa application is complete: issue the visa or refuse the visa," and "[h]ere, the consular officers refused the application under 1201(g)." ECF No. 8 at 5. Put another way, "[c]onsular officers who find that visa applicants have not established their eligibility and deny their applications under 8 U.S.C. § 1201(g)—as the officer did here—have taken the very action required of them under § 1201(g) and 22 C.F.R. § 41.121(a)." *Id.* at 8. At bottom, Defendants say, there is no more to be done, notwithstanding the placement of the application in "administrative processing" status that may lead to "re-open[ing] and re-adjudicat[ing] the applicant's case." *See Karimova*, 2024 WL 3517852, at *2 (citing 9 FAM § 306.2- 2(A)(a)(2)).

The problem for Mr. Jung is that he does not point to any law or regulation requiring Defendants to readjudicate a visa application that had already been "refused" before being placed in "administrative processing." "In fact, [Mr. Jung] has not pointed to any law or regulation that concerns visas in 'administrative processing' at all." *See Yared v. Nepal*, No. 1:24 CV 2114, 2025 WL 1067738, at *4 (N.D. Ohio. Apr. 9, 2025); *see also* ECF No. 12 at 6-11 (no reference

---

[8] The court does not find this worksheet in the record but accepts Mr. Jung's representation concerning its existence and content, which Defendants do not appear to dispute. *See generally* ECF No. 15.

to any authority of this type in Plaintiff's response). Neither has this court identified any such

law or regulation.

The INA requires that "[a]ll immigrant visa applications shall be reviewed and

adjudicated by a consular officer." 8 U.S.C. § 1202(b). As Defendants note, the INA provides

that, after an interview, the consular officer must issue the visa or refuse the visa if the applicant

is ineligible. *See* 8 U.S.C. §§ 1201(a), (g). The implementing regulations of the INA further

emphasize the consular officer's sole obligation is to select one of these two options: "When a

visa application has been properly completed and executed before a consular officer in

accordance with the provisions of the INA and the implementing regulations, the consular officer

must issue the visa [or] refuse the visa [.]" 22 C.F.R. § 41.121(a). These statutory and regulatory

provisions "do not provide a 'specific, unequivocal command' that Defendants issue a final,

unreviewable decision on a visa, or to conduct or complete administrative processing once a visa

has been refused[.]" *Sankari v. U.S. Dep't of State*, No. 2:24-cv-12975, 2025 WL 1550231, at *5

(E.D. Mich. May 30, 2025) (quoting *SUWA*, 542 U.S. at 63); *see also SUWA*, 542 U.S. at 63

(noting that "the APA carried forward the traditional practice prior to its passage" from the All

Writs Act, 28 U.S.C. § 1651(a), that "[t]he mandamus remedy was normally limited to

enforcement of 'a specific unequivocal command'") (quoting *ICC v. New York, N.H. & H.R. Co.*,

287 U.S. 178, 204 (1932)). As one court has aptly articulated the point, "[c]onspicuously absent"

from the relevant provisions of the INA and its implementing regulations "is any requirement

that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative

processing.'" *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024). Nor do any of

these provisions "provide refused applicants with a right to re-adjudication." *See id.*

In essence, Mr. Jung is "effectively suing to compel a consular officer to make *another* final decision on their already refused visa application. [Mr. Jung has] not identified any legal basis for that duty – let alone a specific legislative command or a clear nondiscretionary duty. The Court has no power to order Defendants to readjudicate [the] application, nor can the Court compel an adjudication that has already occurred." *Myers*, 2025 WL 1208646, at *6 (emphasis in original). Put simply, in refusing Mr. Jung's fiancée's application under § 1201(g) after her interview with a consular officer, the State Department fully satisfied all requirements contained in the statutory provisions and regulations governing visa adjudications. It thus discharged its nondiscretionary duties in total. Mr. Jung maintains that the placement of his fiancée's application in administrative processing "means that no final adjudication has occurred," ECF No. 12 at 7, and, to be sure, the State Department has stated that it would "continue processing" the application. *Id.* at 6. But these facts do not compel the conclusion that the "refusal" of Ms. Al-Ithawi's application on May 10, 2024, was not a final decision, where neither § 41.121 nor the INA itself contains any "specific, unequivocal command" for the State Department to issue a decision on a visa application that is specifically-designated as "refused." *See SUWA*, 542 U.S. at 63. In short, the INA and its implementing regulations do not impose a nondiscretionary duty to complete administrative processing after the denial of a visa application.

Neither does § 555(b) of the APA, which Mr. Jung also invokes in support of such a duty. *See* ECF No. 1 ¶¶ 27, 34; ECF No. 12 at 10, 12. However, that "[a]ncillary" provision of the APA simply states that "that within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. 555(b). Section 555(b) "does not identify a discrete agency action; by its plain terms, it applies to *every* agency action." *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 262

(E.D.N.C. 2024) (emphasis in original), *appeal dismissed*, 2024 WL 5509498 (4th Cir. Dec. 9, 2024); *see also Yaghoubnezhad*, 734 F. Supp. 3d at 102 (stating that "this general directive will not cut it"). And so that provision is a "far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed.'" *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (rejecting "Section 555(b) as a basis for relief under Section 706(1), which it is not") (quoting *SUWA*, 542 U.S. at 63). As the United States Court of Appeals for the District of Columbia expressed the point, "Section 555(b) does not in any way dictate" how Defendants "can handle [an applicant's] rejected paperwork" following the refusal of her visa application on May 10, 2024, and thus does not place a clear, non-discretionary duty on the consular officer to re-adjudicate her already refused application. *Karimova*, 2024 WL 3517852, at *4.[9]

Because Defendants discharged their nondiscretionary duty upon the refusal of Ms. Al-Ithawi's visa application, Mr. Jung cannot articulate a redressable injury—and, therefore, standing—to pursue any claim seeking further adjudication of the application. *See Sankari*, 2025

---

[9] In following the persuasive analysis in *Karimova*, the court acknowledges that it is an unpublished opinion. However, *Karimova* "more closely resembles a published opinion in that it offers a more "comprehensive factual account and precisely crafted holdings," having been entered following oral argument and including "a rather lengthy exegesis of its legal reasoning." *Moradi v. Rubio*, No. 24-CV-2902 (GMH), 2025 WL 1865110, at *6 (D.D.C. July 7, 2025). Moreover, there is no doubt of "the D.C. Circuit's national quasi-primacy in administrative law" and its "clout in the field of administrative law that goes well beyond that which a non-parent Circuit usually wields." *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1073 & n.20 (D.N.M. 2014), *amended in part*, 2015 WL 5138286 (D.N.M. Aug. 26, 2015); *see also Slater Park Land & Livestock, LLC v. U.S. Army Corps of Eng'rs*, 423 F. Supp. 3d 1076, 1080 (D. Colo. 2019) (recognizing that "the D.C. Circuit is a leading authority on Administrative Law questions").

WL 1550231, at *6 ("Plaintiff here lost standing the moment the consular officer denied Mr. and Mrs. Sankari's visas under 8 U.S.C. § 1201(g).") (quotation and internal quotation marks omitted); *Martinez*, 2025 WL 2109964, at *5 (finding that "the better reasoned view is consistent with the consensus that 'a consular official's visa refusal under § 1201(g) fulfills the government obligations under the APA to conclude a matter presented to it,'" and concluding that the plaintiff failed to establish standing to pursue all claims seeking to compel further adjudication of a refused visa application) (quoting *Khaleel v. United States Dep't of State*, No. CV H-24-2970, 2025 WL 777082, at *4 (S.D. Tex. Mar. 11, 2025)); *Myers*, 2025 WL 1208646, at *6 (because the court cannot "compel an adjudication that has already occurred, . . . Plaintiffs' purported injury is not redressable by a favorable decision of this Court" and "Plaintiffs failed to establish Article III standing").[10] Some courts characterize the jurisdictional defect in these matters as mootness, or otherwise describe the absence of jurisdiction in general terms. *See Al Khalo v. Goldman*, 769 F. Supp. 3d 899, 904-05 (D. Neb. 2025) (finding that "placing a visa application in administrative processing after a consular officer issues an INA § 221(g) refusal does not leave the defendants with a mandatory, non-discretionary duty to further adjudicate the application within a reasonable time," and dismissing unreasonable-delay APA and mandamus

---

[10] *See also, e.g.*, *Meleo*, 2024 WL 4345289, at *7-9 (holding that plaintiffs lacked a redressable injury, and thus standing, where the court had no power to compel defendants to take further action after a visa application was refused and placed in administrative processing); *Soriano v. United States Dep't of State*, No. CV 2:25-222, 2025 WL 949565, at *4 (W.D. Pa. Mar. 28, 2025) ("[M]ost importantly, Plaintiff cannot demonstrate standing in this case because he admits that the Embassy denied [an] application, and the relevant statutes and regulations make clear that there is no non-discretionary duty for the consular officer at the Embassy to provide the visa applicant with extensive legal reasons for the denial nor to re-adjudicate a visa which has been refused.") (citing *Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 592 (E.D. Pa. 2025)).

claims for lack of subject-matter jurisdiction) (citing *Artan v. Dillard*, No. 4:24CV3114, 2024 WL 4611697, at \*6 (D. Neb. Oct. 11, 2024) (dismissing unreasonable-delay claims for lack of subject-matter jurisdiction "because those claims will not lie")); *Yared*, 2025 WL 1067738, at \*5 (holding that, "because there is no law requiring Defendants to take some further discrete, non-discretionary action concerning [a fiancée's] refused visa, this Court lacks jurisdiction over Yared's claims under both the Mandamus Act and APA"); *Nikpanah v. United States Dep't of State*, No. 2:24-CV-00404-NAD, 2025 WL 374931, at \*10 (N.D. Ala. Feb. 3, 2025) ("Plaintiff cannot show for purposes of the APA that the State Department failed to take a discrete, mandatory action that it is required to take, much less a right to mandamus relief that is 'clear and indisputable.' Consequently, the court lacks jurisdiction over Plaintiff's mandamus/APA claim.") (quotation and citations omitted); *Kulagin v. Blinken*, No. A-24-CV-00953-ADA, 2025 WL 1231897, at \*2 (W.D. Tex. Apr. 28, 2025) (the "denial of a visa application pursuant to § 1201(g) fulfills the government's duty to adjudicate the application and renders claims such as Plaintiffs' moot").

However the jurisdictional inquiry is characterized, these cases share a common factual predicate in that the administrative processing of a visa application continued after the application was "refused." In every case, the court concluded that it had no ability to take action: even if the plaintiff had submitted additional information for reconsideration, "the visa application 'remains refused' and thus the Court lacks jurisdiction to consider Plaintiff's request" to compel adjudication of the application." *See, e.g.*, *Zekiri v. Sec'y, U.S. Dep't of State*, No. 6:24-CV-1232-JSS-NWH, 2025 WL 2021308, at \*5 (M.D. Fla. July 18, 2025) ("[B]ecause Plaintiff has not identified a nondiscretionary 'agency action' that was 'unreasonably delayed,'

the court lacks subject matter jurisdiction under the APA.") (citing *SUWA*, 542 U.S. at 64) (other citations omitted); *Khalilijourabchian v. Hawkins*, No. 1:24-CV-02283-AJT-IDD, 2025 WL 1655330, at *3 (E.D. Va. June 10, 2025) (holding that subject-matter jurisdiction for APA and mandamus claims was lacking where plaintiffs failed to identify any "applicable regulation or statute that imposes upon the Defendants a non-discretionary duty to further consider or re-adjudicate their visa applications within a specific period of time"). Exactly so in Mr. Jung's case.[11]

      In finding that Mr. Jung has not met his burden to establish standing on the instant record, the undersigned acknowledges both the lack of Tenth Circuit authority on the particular question

---

[11] Other courts dismiss APA and Mandamus Act claims of the type Mr. Jung seeks to bring for failure to state a plausible claim for relief under Rule 12(b)(6). Leading the way on that point is *Karimova*. *See* 2024 WL 3517852, at *3 (finding that "[t]he district court properly dismissed [the claim premised on the APA and Mandamus Act] because Karimova has not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing") (quoting *Interstate Commerce Comm. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)); *see also, e.g.*, *Seifan v. Sweeney*, No. CV 25-261 (RC), 2025 WL 2171093, at *6 (D.D.C. July 31, 2025); *Moini v. Rubio*, No. 0:24-CV-62160, 2025 WL 2432845, at *6 (S.D. Fla. July 15, 2025), *report and recommendation adopted*, No. 0:24-CV-62160, 2025 WL 2414573 (S.D. Fla. Aug. 21, 2025). In dismissing these claims on the merits, courts have found that alleged delays of three years or more were insufficient to plausibly allege unreasonable delay. *See, e.g.*, *Al-Obaidi v. Blinken*, No. 3:24-CV-00419, 2024 WL 4536488, at *4 (M.D. Tenn. Oct. 2, 2024), *report and recommendation adopted*, 2024 WL 4535978 (M.D. Tenn. Oct. 21, 2024) ("case law does not support Plaintiff's assertion of unreasonable delay in approximately 17 months to date") (citing *Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *4 (N.D. Ill. June 9, 2022) ("while courts have not drawn a bright-line rule, they often consider delays between three and five years to be reasonable") (other citations omitted)); *Stone v. Blinken*, No. 2:23-cv-12181, 2024 WL 3556183, at *4 (E.D. Mich. July 26, 2024) (in granting the State Department's motion to dismiss an APA claim, citing case law generally recognizing that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable") (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)).

24

before the court and the deep disagreement among judicial officers across the country who have considered the issue. Indeed, a United States District Judge in this District, for whom this court has enormous respect, has undertaken a thoughtful evaluation and reached a contrary conclusion. *Azadani v. Gaudiosi*, No. 24-cv-00825-CNS, 2025 WL 35597, at *4 (D. Colo. Jan. 6, 2025) ("[W]hile the consular officer issued a 'denial,' that denial did not end the process, as the application is still under consideration. Thus, the unreasonable delay claim is justiciable."). In *Azadani*, as in many other cases, courts have found that there is a continuing legal duty on the part of the State Department to complete administrative processing, thus rendering the consular officer's refusal "nonfinal." *See Sankari*, 2025 WL 1550231, at *7 (discussing cases). Courts also have expressed concerns about "the practical issues that would result if the Government were allowed to leave cases in administrative processing without the ability of courts to compel their completion." *See id.* (discussing cases).

This court discounts none of these concerns. Nor is the court insensitive to the frustration of those apparent multitudes of applicants who find themselves in procedural limbo as they hope for a decision allowing them admittance to the United States of America. The undersigned doubts these people appreciate that a process is legally finished when the State Department affirmatively solicits additional information and (as in Ms. Al-Ithawi's case) explicitly tells the applicant that "[b]efore we can *continue processing your visa application*, we need you to send the information . . . marked urgent to us." ECF No. 19-1 at 1 (emphasis added). Little wonder, then, that many applicants seek the aid of federal courts, at great cost to them and with consequential impact on judicial resources.

Ultimately, however, the court cannot find that the analysis in the opposing case law

focuses on the proper considerations. The fact that a consular official may reconsider an application is of no legal consequence because "[t]he mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal." *Sackett v. EPA*, 566 U.S. 120, 127 (1980). And even if the State Department tells the applicant that her visa will be re-adjudicated, it "is irrelevant to the relief [the applicant] seeks," because the court's authority to compel agency action "is confined to compelling only discrete, *legally required* agency actions." *Yared*, 2025 WL 1067738, at *4 (citing *SUWA*, 542 U.S. at 64) (emphasis added). And much as this court might wish for greater clarity and efficiency in the State Department's visa-application process, "it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing." *See Sankari*, 2025 WL 1550231, at *7 (observing that "[s]uch issues are for the legislature or rulemaking body to resolve") (citation omitted); *see also Datta v. Rubio*, No. 24-2937 (PLF), 2025 WL 752643, at *9 (D.D.C. Mar. 10, 2025) (finding that "the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court").

Importantly, the court's conclusion here also more closely comports with the long-established principle of judicial non-intervention in matters related to immigration. "For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately

interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."); *Karimova*, 2024 WL 3517852, at *6 (recognizing a "background principle of judicial abstinence" that "underscores the absence of any clear command in law or precedent for the action Karimova seeks to compel"). Because these types of claims "fall outside the Judicial Branch's wheelhouse," *Karimova*, 2024 WL 3517852, at *5, this court respectfully finds the better-reasoned approach to be articulated in those decisions which—exercising restraint and hewing to a careful reading of the relevant statutory and regulatory language—hold that the government has no duty to take some further discrete, non-discretionary action after officially refusing a visa application, even though it may have been placed in administrative-processing status. Following suit, this court declines to read into these statutes or regulations a duty that patently cannot be found in them.

There being no specific, "clear command in law or precedent for the action [Mr. Jung] seeks to compel," *Karimova*, 2024 WL 3517852, at *6, he fails to articulate a redressable injury necessary to establish standing to obtain the exceptional and rare relief of an order compelling further adjudication of his fiancée's visa application—whether under the APA or the Mandamus Act. Because Mr. Jung has failed to establish standing, his claims must be dismissed without prejudice. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice.") (citation omitted).

*    *    *

The court is prohibited from assuming that Article III standing exists in order to make pronouncements about the merits of an underlying claim, "regardless of the claim's significance." *See Colo. Outfitters*, 823 F.3d 543 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (explaining that "such an approach . . . carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers")); *Henderson v. Reventics, LLC*, No. 23-cv-00586-MEH, 2024 WL 5241386, at *8 (D. Colo. Sept. 30, 2024) (declining to address arguments on failure to state a claim where Article III standing was lacking). Therefore, the court does not take up the questions whether dismissal is compelled based on the State Department's arguments that its decision to refuse Ms. Al-Ithawi's visa application is non-justiciable under the nonjurisdictional consular-nonreviewability doctrine, *see Muñoz*, 602 U.S. at 908 n.4, or because Mr. Jung has failed to plead a plausible unreasonable-delay claim. *See* ECF No. 8 at 7-13.

### B.    Fifth Amendment Due-Process Claim

The absence of a specific, "clear command in law or precedent" to act, *Karimova*, 2024 WL 3517852, at *6, similarly compels the dismissal of Mr. Jung's Fifth Amendment due-process claim for lack of an injury sufficient to support standing. *See* ECF No. 1 ¶¶ 37-41.

The right to due process has both procedural and substantive components, *see Kerry v. Din*, 576 U.S. 86, 92-93 (2015), and Mr. Jung asserts that both aspects of due process have been offended in his case because of "Defendants' delay in adjudicating [his] fiancée's visa application[.]" ECF No. 1 ¶¶ 39, 41. But the Supreme Court recently has made clear that a U.S. citizen has no constitutionally-protected liberty interest in having his foreign-citizen family members live in the United States. *Muñoz*, 602 U.S. at 915-16 ("While 'families of putative

immigrants certainly have an interest in their admission,' it is a 'fallacy' to leap from that premise to the conclusion that United States citizens have a 'fundamental right' that can limit how Congress exercises 'the Nation's sovereign power to admit or exclude foreigners.'") (quoting *Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977)). Thus, because Mr. Jung has not identified a legally-protected interest sufficient to support a due-process claim, it too fails for lack of standing. *See, e.g.*, *Martinez*, 2025 WL 2109964, at *8 ("[Plaintiff] premises his Fifth Amendment claim on a delay in adjudicating his mother's visa application, the final adjudication of that application as discussed above [] also renders him without an injury in fact on such claim thus depriving him of standing."); *Yared*, 2025 WL 1067738, at *6 ("Yared lacks standing to seek relief under the Fifth Amendment because she fails to allege any invasion of a legally protected interest" based on "Defendants' failure to further adjudicate [her fiancé's] visa").

In summary, the rationale underlying the court's conclusion that Mr. Jung lacks standing applies to *all* of his claims, including his due-process claim. For the reasons stated throughout this Order, the court again does not reach the parties' arguments on the doctrine of consular nonreviewability and the merits. *See Brereton*, 434 F.3d at 1218 ("[H]aving determined that it lacks jurisdiction over the action, [the court] is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original) (citations omitted).[12]

## CONCLUSION

---

[12] *Martinez* took note of other courts addressing such Fifth Amendment claims on the merits and proceeded to find, in the alternative, that if the plaintiff had standing, "such claims clearly and undoubtedly lack merit under the facts here." *See* 2025 WL 2109964, at *8 (citations omitted). In light of the explicit holding of the Supreme Court in *Muñoz*, this court has no doubt that Mr. Jung has stated no plausible Fifth Amendment claim under Rule 12(b)(6), but concludes that it is obliged to dismiss the claim on jurisdictional grounds.

For the reasons set forth above, it is respectfully **ORDERED** as follows:

(1) Defendants' Motion to Dismiss Plaintiff's Petition for Writ of Mandamus and Complaint for Injunctive Relief (ECF No. 8) is **GRANTED**;

(2) Plaintiff's Complaint (ECF No. 1) is **DISMISSED without prejudice** for lack of subject-matter jurisdiction; and

(3) The Clerk of Court shall **TERMINATE** this matter accordingly.

DATED: September 19, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge